## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor, | ) | |
| ──────────────────── | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Case No. 24-00007-MCR |
| v. | ) | |
| | ) | |
| ROGER SCHLOSSBERG, in His | ) | |
| Official Capacity as Chapter 7 Trustee | ) | |
| of the Bankruptcy Estate of Gregory B. | ) | |
| Myers, | ) | |
| | ) | |
| Defendant. | ) | |
| ──────────────────── | ) | |

### OPPOSITION TO DEBTOR'S MOTION TO DISQUALIFY COUNSEL

Come now Brian King ("Mr. King"), Cristina King ("Ms. King") and the Cristina and Brian King Children's Trust (the "Trust") (collectively, the "Plaintiffs" or "King Parties," and each a "Plaintiff" or "King Party"), by and through undersigned counsel, and in opposition to the Debtor's Motion to Disqualify Counsel (the "Motion," as found at DE #49, with the proponent thereof being known as the "Debtor" or "Mr. Myers") state as follows:

### I.    Introduction

At 3:41 pm on July 1, 2025—approximately three hours after evidence closed in a two-day trial, roughly eighteen months after this adversary proceeding was commenced, and more than five years after undersigned counsel first appeared in the Debtor's main bankruptcy case—Mr. Myers filed the instant Motion, seeking the disqualification of counsel. The Motion suggests an

1

impermissible conflict to exist (i) "as a result of VerStandig's prior representation of Serv Trust, 6789 Goldsboro LLC, Gregory B. Myers, and Daniel J. Ring, Trustee of Serv Trust. . .," Motion, DE #49, at p. 1; and because (ii) "VerStandig represents the King Parties in the above adversary at the direction of Roger Schlossberg, Trustee, which is a clear conflict of interest. . .," *id.* (emphasis removed to aid readability). The Debtor proceeds to append a prior motion to disqualify undersigned counsel, filed in one of the Debtor's former bankruptcy cases in a separate jurisdiction. *Id.*

The Motion merits denial for various reasons. First, there is not now—and there never has been—a conflict of interest. While undersigned counsel did formerly represent Mr. Myers, the scope of that former representation is unrelated to counsel's subsequent representation of the King Parties. Nor is this coincidental; a careful assessment was undertaken, when counsel was retained by the King Parties, to ensure no conflict of interest would be afoot.

Second, undersigned counsel has never represented Serv Trust—period. This allegation is counterfactual. While Serv Trust has since been found to be the alter ego of Mr. Myers, and undersigned counsel *did* represent Mr. Myers in various matters, none of those matters concerned the Debtor's use of Serv Trust. In every single case in which counsel represented Mr. Myers, the representation was expressly on behalf of Mr. Myers and/or his wife, Barbara Ann Kelly ("Ms. Kelly"), and Serv Trust was not a party to—or consideration in—any such matter.

Third, this litigation was not commenced "at the direction of" Roger Schlossberg ("Mr. Schlossberg" or the "Trustee"). This assertion is also counterfactual. To the contrary, counsel represented the King Parties, in connection with their dispute with Serv Trust, well before Mr. Schlossberg played any role in the case. The Trustee is the King Parties' adversary in this case; while the adversarial posture has been marked by professionalism and cordiality, and while an

amicable settlement has been reached after drawn out negotiations, Mr. Schlossberg was—and remains—the King Parties' counterparty.

Fourth, Mr. Myers has waived any right he may have had (and it is urged, for reasons discussed *passim*, that no such right ever existed) to seek disqualification by waiting nearly a year and a half after this litigation was commenced. The Debtor is an active litigant and well familiar with how to file motions, including those seeking extraordinary relief. In waiting so long to file this Motion—and doing so only after the presentation of evidence at trial had concluded—Mr. Myers forfeited any right he may have ever had to seek such relief.

Fifth, even if, counterfactually and *arguendo*, a conflict did exist, the same would be the Trustee's to assert, not Mr. Myers'. The assets, *vel non*, of Serv Trust are assets of the Debtor's bankruptcy estate by virtue of Serv Trust being the Debtor's alter ego and none of the disregarded entity's assets having been exempted. Not only does Title 11 of the United States Code (the "Bankruptcy Code") not permit a debtor to assert a conflict with pre-petition counsel but, rather, the Bankruptcy Code actually expressly allows a trustee to engage a debtor's former counsel. While Mr. Schlossberg has most certainly not employed undersigned counsel in this case, the construct is nonetheless indicative of it being the Trustee—not the Debtor—who holds and guards the ability to assert any putative conflict.

Finally, insofar as the instant adversary proceeding has been substantively concluded by entry of an order approving a compromise of the claims herein, DE #61, it appears the Motion may be moot. This argument, however, is most pertinent in the prism of evidencing the enormous delay on the part of the Debtor in bringing the Motion, and is chiefly advanced as indicia of the inequities and potential prejudice that flow from someone literally waiting until after the close of evidence in a trial before bringing forth such a request for the disqualification of counsel.

For these reasons, and as extrapolated upon *infra*, it is respectfully suggested the Motion be denied.

## II.    Relevant Facts

### a.  Representation of the Debtor

Commencing in August of 2010, undersigned counsel was employed as an attorney at Offit Kurman, P.A. ("Offit Kurman").

While at Offit Kurman, undersigned counsel, being both a litigation associate and a member of the Florida Bar,[1] was asked to represent the Debtor in various litigation matters in the state and federal courts of Florida and Maryland (including in various appellate courts), and did so. These representations primarily concerned the attempted foreclosure of properties owned by the Debtor and the Debtor's dealings with various financial institutions. These representations were primarily undertaken with one or more other attorneys employed by Offit Kurman serving as co-counsel, with at least one partner-level attorney working on each case alongside undersigned counsel.

At some point during undersigned counsel's tenure at Offit Kurman, the Debtor sought a meeting with a zoning lawyer, pertaining to property located at 6789 Goldsboro Road, and undersigned counsel was asked to help facilitate the logistics of such since undersigned counsel spoke regularly with the Debtor.

Undersigned counsel has never acted as a zoning lawyer, does not hold himself out as a zoning lawyer, has no topical expertise in the field of zoning law, and did not advise the Debtor in

---

[1] Upon information and belief, at the time said representations commenced, undersigned counsel may have been the only litigation attorney at Offit Kurman to be an active member of the Florida Bar. At all times relevant, undersigned counsel was also licensed to practice law in the State of Maryland, but such was a far less unique qualifier at Offit Kurman, which maintains multiple offices in the State of Maryland.

connection with the zoning of the at-issue property. Undersigned counsel does not believe he attended the meeting in question other than to facilitate its beginning and, if he did remain present for the meeting, has no recollection of such.

Undersigned counsel has never furnished representation to Serv Trust and has never counseled the Debtor in connection with Serv Trust. While Serv Trust has been judicially determined to have been the Debtor's alter ego for a prolonged period of time, the representation of the Debtor, furnished by undersigned counsel, never concerned the Debtor's utilization of Serv Trust to hide assets, frustrate creditors, conceal income, or undertake any other activities whatsoever.

Undersigned counsel never saw the Serv Trust trust agreement until after he ceased to represent the Debtor, and then first saw the document at the Debtor's examination in this bankruptcy proceeding.

At no time during undersigned counsel's tenure at Offit Kurman did undersigned counsel have occasion to review the operating agreement (or any amended iteration thereof) for 6789 Goldsboro LLC ("6789 Goldsboro"). Undersigned counsel was not generally aware of the King Parties' existence while at Offit Kurman.[2] Undersigned counsel never spoke to either of the King Parties until more than a year after he left Offit Kurman.

While it appears undersigned counsel carried out one discreet research assignment at the direction of a partner at Offit Kurman, for which time was billed to 6789 Goldsboro LLC, the

---

[2] Mr. King and Ms. King maintain a social relationship with at least one Offit Kurman attorney with whom undersigned counsel frequently worked. Undersigned counsel does not recollect ever hearing either of their names, or discussing either of the King Parties, with this attorney, while at Offit Kurman. Given that nearly a decade has since passed, however, it would be disingenuous to assert—with any modicum of absolute certainty—that no casual, social reference to either or both of the King Parties was ever made.

research assignment in question did not concern (i) Serv Trust; (ii) the King Parties; (iii) an operating agreement; (iv) redemption rights; (v) bankruptcy preparation; or (vi) anything of the like. Rather, based on a review of the billing entry appended to the Debtor's Motion, it appears the research assignment concerned "Fair Housing Act treatment of municipal age restrictions," Motion, DE #49, at p. 60, something that is seemingly of absolutely no moment or relevance to any of the issues in this case. In any event, the time entry in question was billed to 6789 Goldsboro LLC, an entity that is now managed by Mr. King, and which most certainly does not assert any objection to undersigned counsel's representation of the King Parties.

### b. Representation of the King Parties and 6789 Goldsboro LLC

In or about the late summer or early autumn of 2015, undersigned counsel gave notice to Offit Kurman of his intent to separate from the firm, and did thereafter formally depart the firm on or about November 20, 2015 and form The VerStandig Law Firm, LLC ("VLF"). Collateral with undersigned counsel's departure from Offit Kurman, undersigned counsel sought leave to withdraw as counsel for the Debtor in all then-pending matters.[3]

Nearly two years later, in July 2017 the King Parties engaged VLF to serve as their counsel in connection with the redemption of Serv Trust's interest in 6789 Goldsboro LLC. This representation later expanded to encompass the defense of counterclaims brought by Serv Trust and the bringing of a declaratory judgment claim to establish Serv Trust is the alter ego of Mr. Myers. After initiating a claim to establish the redemption of Serv Trust's interest in 6789 Goldsboro LLC, undersigned counsel filed suit against Serv Trust, on behalf of 6789 Goldsboro

---

[3] Offit Kurman also sought to withdraw as counsel in such matters, at the time. This is not coincidental, as part of the reason undersigned counsel gave such a large period of notice before leaving the firm was to allow for various matters to conclude without disruption correlative to undersigned counsel's departure.

LLC; that suit was subsequently administratively (but not substantively) consolidated with the King Parties' suit against Serv Trust.

At the time undersigned counsel was approached by the King Parties, a careful conflict analysis was undertaken to ensure the contemplated representation would not implicate, concern or involve any matter for which undersigned counsel had represented Mr. Myers. Had undersigned counsel not been absolutely assured of such, he would not have agreed to commence representing the King Parties in the matter.

When a counterclaim was brought by Serv Trust, suggesting Mr. King to have breached certain fiduciary duties owed to 6789 Goldsboro LLC, and at the urging of then-counsel for Serv Trust, undersigned counsel ceased acting as counsel for 6789 Goldsboro LLC so as to avoid even the appearance of a conflict of interest in serving as counsel to both an entity (6789 Goldsboro LLC) and an officer thereof (Mr. King) accused of having breached a fiduciary duty owed to the entity. That allegation of a conflict did not concern any prior representation of Mr. Myers. Certain attorneys at Offit Kurman then took over as counsel for 6789 Goldsboro LLC in connection with that litigation; undersigned counsel has not represented 6789 Goldsboro LLC at any time since.

As noted *supra*, 6789 Goldsboro LLC is managed by Mr. King and has been managed by Mr. King at all times since prior to the initiation of this case. The King Parties do not believe there is a conflict in their current counsel having also formerly furnished legal advice to an entity one of the King Parties manages, which is not a debtor in bankruptcy. The one time it appeared such a conflict could theoretically be extant—when Mr. Myers, through his alter ego of Serv Trust, accused Mr. King of breaching a fiduciary duty owed to 6789 Goldsboro—separate counsel was engaged to avoid even the appearance of a conflict. The claim for breach of fiduciary duty has since been dismissed following a state court trial. Neither Mr. Myers nor Mr. Schlossberg control

6789 Goldsboro LLC and, with the settlement of this matter, the Debtor's estate no longer purports to hold any interest in 6789 Goldsboro LLC.

### III.    Standard

Under Maryland law, the disqualification of counsel is an extreme remedy, being one that necessarily deprives a party of her/his choice of attorney(s):

> The disqualification of an attorney "is a drastic remedy since it deprives litigants of their right to freely choose their own counsel." The court, however, must also "be mindful of its obligation to the public and to upholding integrity in the judicial system." Accordingly, in deciding a disqualification motion, the court balances "two significant interests . . . : the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." In light of a party's right to select its own counsel and the drastic nature of disqualification, the movant "'bears a high standard of proof to show that disqualification is warranted.'" Although the court "must not weigh the competing issues with hairsplitting nicety" to avoid disqualification of conflicted counsel, it should allow "[d]isqualification at the urging of opposing counsel . . . only where the conflict is such as clearly to call in question the fair and efficient administration of justice.'"

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. Perlberg*, 819 F. Supp. 2d 449, 452–53 (D. Md. 2011) (quoting *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 722 (D. Md. 2004) (citing *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 304 (D. Md. 1995)); quoting *Buckley*, 908 F. Supp. at 304 (citing *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 724 (E.D. Va. 1990)); quoting *Stratagene v. Invitrogen Corp.*, 225 F.Supp.2d 608, 610 (D. Md. 2002)). *See also Iomaxis, LLC v. Hurysh*, 2022 U.S. Dist. LEXIS 10582, at *5 (D. Md. Jan. 20, 2022) (holding similarly).

In assessing a request to disqualify counsel on the basis of a claimed conflict emanating from a prior representation, courts engage a two-part analysis:

> In determining whether disqualification under MRPC 1.9 is proper, the court must undertake a two-part inquiry. It must find that the moving party established, first, "that an attorney-client relationship existed with the former client, and second, that the matter at issue in the former representation was the same or substantially related to that in the current action."

*Pennsylvania Nat. Mut. Cas. Ins. Co.*, 819 F. Supp. 2d at 453 (quoting *Stratagene*, 225 F.Supp.2d

at 610).

### IV.    Argument: The Motion Should be Denied

### a.    Previous Representations are Unrelated

Inasmuch as undersigned counsel has never served as an attorney for Serv Trust (a now-disregarded entity), and does not presently represent the Debtor, the matter *sub judice* would have to be "substantially related" to a prior representation of the Debtor for disqualification to be appropriate. A plain review of governing law and the facts herein reveals no such substantial relationship to exist.

The Maryland Rules of Professional Conduct spell out, in appreciable detail, the duties a lawyer owes to former clients:

> (a) An attorney who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

> (b) An attorney shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the attorney formerly was associated had previously represented a client:

> (1) whose interests are materially adverse to that person; and

> (2) about whom the attorney had acquired information protected by Rules 19-301.6 (1.6) and 19-301.9 (c) (1.9) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

> (c) An attorney who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Md. Rule 19-301.9

Thus the first question is if undersigned counsel's representation of the King Parties comes in "the same or a substantially related matter in which [the King Parties'] interests are materially adverse to the interests of [the Debtor]." Plainly, this is answered in the negative. Undersigned counsel's previous representations of the Debtor did not concern Serv Trust, did not concern the Debtor's use of Serv Trust as an alter ego, did not involve Serv Trust's putative ownership of a subordinate interest in 6789 Goldsboro LLC, did not involve the 6789 Goldsboro LLC operating agreement, did not concern a redemption of membership interests under that operating agreement, did not involve the Debtor's bankruptcy case and did not involve the Debtor's dealings with the Trustee. To the contrary, undersigned counsel primarily represented the Debtor in various matters concerning properties held by the Debtor in his own name, and in various disputes the Debtor had with financial institutions.

The second inquiry is equally answered in the negative: it does not appear the matters implicated herein are of any substantial relation to work Offit Kurman did for the Debtor. While the Debtor protests the existence of a meeting with a zoning lawyer at Offit Kurman, it is altogether unclear what such a meeting would have to do with the Debtor's utilization of Serv Trust as his alter ego, with the operating agreement of 6789 Goldsboro LLC, or with the redemption of Serv Trust's former interest in 6789 Goldsboro LLC. However, even if some relationship existed, the second inquiry would still be answered in the negative, as undersigned counsel never acquired any pertinent information concerning the zoning meeting—in fact, undersigned counsel does not practice in the field of zoning law.

This leaves only the third inquiry: whether or not information gleaned from the prior representation of Mr. Myers is now being used against him. In making such an assessment, "a generalized 'strategy' with regard to litigation or settlement is not sufficient to disqualify opposing

counsel." *Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F. Supp. 2d 774, 782 (D. Md. 2008). And yet other than a vague understanding of Mr. Myers' generalized litigation strategy (which is one now well known to many through his litigious undertakings in this Honorable Court and others), no such information gleaned is even colorably relevant or capable of being used against Mr. Myers. The subjects of representation are so thoroughly unrelated as to be of no utility; nothing gleaned from a foreclosure suit in Florida is of any moment to whether membership interests in a limited liability company have been redeemed pursuant to the contours of that entity's operating agreement.

To be sure: undersigned counsel did not take the Debtor's file with him when he left Offit Kurman, and at no point in time has undersigned counsel divulged to any of the King Parties any confidence of the Debtor—period. Nor has this been a particularly difficult line to walk, as the King Parties' case is so thoroughly unrelated to the cases in which undersigned counsel represented the Debtor as to be of no relation; nothing about one set of cases would be of any moment to the other, and thus no confidences would ever even near a point of revelation.[4]

### b. Any Conflict Has Long-Since Been Waived

Even if, *arguendo* and counterfactually, a conflict existed because some relation of cases was extant, the same has been waived by the Debtor. This is not a genuine effort to seek shelter from conflicted counsel; the Motion appears to be a last-ditch effort to forestall adjudication of a case *after* trial was held on a settlement motion, being docketed just moments before closing

---

[4] It also bears fleeting note that undersigned counsel truly does not recollect any confidences of the Debtor. It has been roughly a decade since counsel left Offit Kurman; while there no doubt exist recollections of representing the Debtor and of the Debtor's demeanor, any privileged confidences have long-since been lost to the frailty of time. It is possible counsel once knew the Debtor's settlement negotiation strategy in one or more cases involving financial institutions but, even if so, such has been many, many years forgotten by now.

arguments commenced.

As Judge Chasanow has previously observed, a failure to timely seek disqualification may result in a waiver of such a claim:

> Courts have held that a party may waive its objection to a conflict of interest by failing to file timely a motion to disqualify. "[T]he mere length of the delay is not dispositive and the Court should not deny a motion to disqualify based on delay alone." The *Buckley* court suggested additional factors that a court should consider: "when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred, and in particular, whether the motion was delayed for tactical reasons; and whether the disqualification would result in prejudice to the nonmoving party."

*In re Modanlo*, 342 B.R. 230, 236–37 (D. Md. 2006) (quoting *Buckley*, 908 F. Supp. at 307 (quoting *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F. Supp. 1150, 1165 (N.D. Cal. 1988)); citing *Cassidy v. Lourim*, 311 F.Supp.2d 456, 461 & n. 11 (D. Md. 2004)).

Here, the Debtor learned of the claimed conflict at least as far back as September 2017 when undersigned counsel made an appraisal demand on Serv Trust in the care of Mr. Myers. Undersigned counsel brought this adversary proceeding, on behalf of the King Parties, nearly eighteen months ago. There is absolutely no explanation for the delay other than one of tactical election. And asking the King Parties to engage new counsel *after* the close of trial, and *after* an order approving a settlement agreement has been entered, would be grossly prejudicial in nature.

Thus, even if a conflict existed (and, as urged *passim*, one very much does not), the Debtor has long-since waived his right to seek disqualification based upon such a conflict. This is simply not the act of a man concerned about his prior counsel's actions but, rather, the transparently pretextual efforts of an ethically-unmoored litigant seeking to ". . . gum up the judicial process for his own personal benefit. . ." *In re Kelly*, 656 B.R. 541, 598 n.23 (Bankr. D. Md. 2023) (quoting *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2020 U.S. Dist. LEXIS 26180, 2020 WL 758154 at *4 (D. Md. Feb. 13, 2020)).

### c. The King Parties Have Not Acted at Mr. Schlossberg's Direction—Ever

Equally, it bears repetition that the King Parties have not ever acted at Mr. Schlossberg's direction. This is a case that is concluding with the King Parties tendering to the Trustee the sum of $150,000.00 and indemnifying the Trustee for future correlative legal fees. The settlement was arrived upon following numerous rounds of negotiation. While the King Parties certainly do not feign to be hostile to the Trustee, or to hold any animus toward the Trustee, they have also been his litigation adversaries in this case.

For the avoidance of any doubt or ambiguity, however, this litigation was *not* commenced at the Trustee's request. The related state court litigation was commenced long before the Trustee had any involvement in the proceedings. Once it became apparent Serv Trust was Mr. Myers' alter ego, the Trustee entered the state court litigation as a nominal defendant. When the state court declared Serv Trust to, in fact, be Mr. Myers' alter ego, the Trustee and the King Parties worked cooperatively to assess the ramifications of that ruling and how best to bring the remaining issues before this Honorable Court. So, yes, there have been multiple moments of agreement along the way, but agreement ought not be conflated with—or mistaken for—the giving of direction. The Trustee has always been represented by his own counsel and the King Parties have always been represented by their own counsel. While polite and often cordial, the relationship between the Trustee and the King Parties has enduringly been one of counterparties never any closer than arm's length.

### d. Representation of the Debtor is Immaterial to Conflict Analysis

The majority of this brief addresses, in various manners, why there does not exist any conflict that flows from prior, unrelated representations of the Debtor. And the King Parties, together with their counsel, assuredly stand firmly by this fairly well-settled proposition. But the

proposition is, itself, also something of a red herring. The Debtor is not a party to this adversary proceeding and this adversary proceeding concerns only the redemption of a former asset of Serv Trust—a legal entity that has been found to be the Debtor's alter ego and the assets of which have, accordingly, been deemed assets of the Debtor's bankruptcy estate.

Plainly, Mr. Myers is not a party to this proceeding. While he has sought to intervene (also at the eleventh hour), no such motion has been granted. And, as will be addressed in a separate filing, the relevant intervention motion comes well shy of the standard requisite to enter this case, notably being devoid of "a pleading that sets out a claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), and otherwise failing to establish any grounds for intervention by right or permission. Yet even if, *arguendo*, Mr. Myers could somehow intervene, such would be in a post-trial posture, with a settlement having already been approved. There is, quite simply, no litigation to be had against Mr. Myers. The sole counterparty in this litigation was, and is, Mr. Schlossberg.

The Maryland Rules prohibit the representation of a counterparty, adverse to a former client of an attorney, "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Md. Rule 19-301.9.

The King Parties' interests, in this adversary proceeding, are not adverse to those of Mr. Myers—they are adverse to those of Mr. Schlossberg in his capacity as trustee of Mr. Myers' bankruptcy estate. In fact, if anything, the King Parties' offer to settle the litigation through the payment of monies to the estate is a benefit—not detriment—to Mr. Myers, who will exit

14

bankruptcy without a discharge, aided by the relief of those obligations Mr. Schlossberg is able to partially or fully retire through administration of the Debtor's estate.

To be sure, a bankruptcy trustee ought not be conflated with a debtor, and a bankruptcy estate ought not be conflated with a debtor who is a natural person. If anything, the docket in Mr. Myers' main case well exemplifies that the Debtor's interests are assuredly not synonymous with those of Mr. Schlossberg, who Mr. Myers has taken to often vilifying through outlandish and hyperbolic attacks.

So if Mr. Myers is not to be conflated with Mr. Schlossberg, it becomes unclear from where any actual conflict could emanate. The King Parties are not litigating against Mr. Myers; they were litigating—before settling—against Mr. Schlossberg. Yet Mr. Schlossberg has not suggested undersigned counsel to have formerly been his attorney in any related matter, nor has he suggested any prejudice to be extant on account of undersigned counsel's prior, unrelated representation of Mr. Myers.

Lest the foregoing appear technical, it merits notation that the Bankruptcy Code actually goes so far as to not only embrace the distinction between debtors and trustees but, too, to create a paradigm where a trustee is free to engage the services of a debtor's former counsel. 11 U.S.C. § 327(e). The standard for such is merely that the proposed employment of a debtor's former counsel (i) be in the best interests of the estate; and (ii) involve an attorney who is not personally adverse to the debtor or the estate. *Id.*

So even if, counterfactually and *arguendo*, undersigned counsel had once counseled the Debtor in connection with his use of Serv Trust as an alter ego to acquire an interest in 6789 Goldsboro LLC, the Trustee would actually be able to directly hire undersigned counsel to represent the estate's interests in this litigation. And if the Trustee could engage undersigned

15

counsel in this litigation, the Trustee could, too, consent to the waiver of any conflict of undersigned counsel in this litigation. Md. Rule 19-301.9.

This, of course, is not what has happened *sub judice*—at all. Undersigned counsel had no related representation of Mr. Myers, undersigned counsel has never furnished counsel to Mr. Myers in connection with his use of Serv Trust, and undersigned counsel has not been the Trustee's counsel in this case. But the foregoing nonetheless speaks to why it is that the Trustee, not Mr. Myers, is the one who would have standing to assess any alleged conflict with opposing counsel, and it is the Trustee, not Mr. Myers, who would need to seek disqualification.

### e. The Motion is Moot

Finally, while the King Parties and their counsel confidently defend the Motion on the merits, they also necessarily note that, as a byproduct of the Debtor having waited so long to bring the Motion, the relief sought therein is now moot. The adversary proceeding is no longer a live controversy, with the compromise of the parties thereto having now been approved by this Honorable Court. And there is, accordingly, no pertinent advocacy for undersigned counsel to undertake on this matter in this Honorable Court.

Where a case is dispositively concluded before a motion for disqualification becomes ripe, the motion does, in turn, become moot. *See Beck v. CKD Praha Holding, A.S.*, 999 F. Supp. 652, 657 (D. Md. 1998) (denying as moot a motion to disqualify counsel when the court elects to abstain from a proceeding); *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 684 (E.D. Va. 2008) (denying as moot a motion to disqualify counsel when a case is being dismissed); *Sister City Logistics, Inc. v. Fitzgerald*, 2025 U.S. Dist. LEXIS 122767, at *8 (S.D. Ga. June 27, 2025) (denying as moot a motion to disqualify after a case was remanded to state court); *Crawford v. Hughes*, 2021 U.S.

Dist. LEXIS 98864, at *1 n.5 (E.D. Va. May 25, 2021) (denying as moot a disqualification motion when a case has been dismissed).

Of course, none of the foregoing cases deal with a motion to disqualify brought after the close of evidence in a trial. Such is not because topical case law portends poorly for the King Parties; such is, rather, because a diligent review of precedent simply does not appear to turn up any instance of such a motion having ever been brought at such a late stage in an adversary proceeding or a federal civil case. This is, assuredly, not a coincidence: while mootness is no doubt grounds upon which the Motion may be denied, the mere fact that mootness is a relevant consideration speaks, equally, to the enormous and indefensible delay of the Debtor in bringing the Motion nearly a year-and-a-half into this case's pendency.

## V.    Conclusion

Undersigned counsel represented the Debtor in various cases, in Florida and Maryland, from 2010 through 2015. This case concerns a dispute that arose in 2017, between Serv Trust (the Debtor's alter ego) and the King Parties. Undersigned counsel's representation of the Debtor never touched on Serv Trust, the King Parties, or a dispute that would not arise for more than a year after counsel left Offit Kurman. There is, quite plainly, absolutely no relation between the representations. And there is, accordingly, no conflict of interest capable of informing the disqualification of counsel.

WHEREFORE, the King Parties respectfully pray this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully submitted,

Dated: July 14, 2025                          By: /s/ Maurice B. VerStandig
                                              Maurice B. VerStandig, Esq.
                                              Bar No. 18071
                                              The VerStandig Law Firm, LLC
                                              9812 Falls Road, #114-160
                                              Potomac, Maryland 20854
                                              Phone: (301) 444-4600
                                              Facsimile: (301) 576-6885
                                              mac@mbvesq.com
                                              *Counsel for the King Parties*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all counsel in this adversary proceeding.

I DO FURTHER CERTIFY that on this 14th day of July, 2025, a copy of the foregoing was served via First Class Mail, postage prepaid, upon:

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102
*Debtor*

/s/ Maurice B. VerStandig
Maurice B. VerStandig

18